STATE OF MAINE                          SUPERIOR COURT
WALDO, SS.                              DOCKET NO. RE-15-14


THE THEOBALD TRUST, et al          )
            Plaintiffs             )
                                   )
        v.                         )        FINDINGS, DECISION
                                   )        AND JUDGMENT
DAVID LITTLEFIELD, et al           )
            Defendants  and        )
                                   )
                                   )
BANGOR SAVINGS BANK                )
            Party-In-Interest      )


This matter came before the Court for trial on October 5, 2016. The issues identified in the Plaintiffs' Complaint and in the Court's pretrial order dated April 6, 2016 were addressed during the course of the trial. In addition, the issues raised in the Party-in-Interest's Crossclaim were also presented to the Court for its determination.

Defendants Myles Gardner and Juanita Littlefield appeared at the trial. Defendant David Littlefield failed to appear at the trial, and had previously also failed to appear during earlier pretrial conferences.[1]

Based upon the evidence presented at trial, the Court makes the following factual findings.

---

[1] Subsequent to the trial, Defendant, David Littlefield, submitted a letter to the Court dated Novembr 21, 2016. The letter, which purported to submit evidence which had not been presented at trial as well as argument, is stricken and will not be considered by the Court in its findings and decision.

1

Plaintiffs Kenneth and Pamela Theobald are Co-Trustees of The Theobald Trust. (hereinafter referred to as "the Trust")[2]. The Trust became the owner of a certain parcel of land in Brooks, Maine on or about November 30, 1998 through a conveyance by warranty deed from the Plaintiffs, Kenneth and Pamela Theobald.

On or about April 2, 2014 the Trust entered into a land installment contract with the named defendants, David Littlefield, Juanita Littlefield (known as Juanita Gardiner at the time), and Myles Gardiner with regard to the same premises located in Brooks Maine.[3] At the time the Contract was signed, the Defendants paid the Plaintiff's $10,000 as a payment toward the total purchase price of $199,000. Under the terms of the Contract, the Defendants were to pay monthly installment payments in the amount of $1000 toward the purchase price, as well as additional monthly payments of $200 toward real estate taxes and $141 for insurance premiums. The Defendants were also solely responsible for payment of any and all utilities for the premises.

The Contract also contained a provision prohibiting either the buyer or seller from permitting any lien or encumbrance to be placed on the premises. The

_____

[2] In various pleadings, filings and/or orders in this case there have been references made to both "The Theobald Trust", and "The Theobald Family Trust." The caption in the original Complaint refers to The Theobald Trust, as does the deed at Plaintiffs' Exhibit 1 and the Land Installment Contract at Plaitiffs' Exhibit 2. Accordingly, this Decision and Judgment in its reference to "the Trust" relates to The Theobald Trust.

[3] Although Plaintiffs' Exhibit 2 (The Land Installment Contract and hereinafter referred to as "the Contract") did not include an Attached Exhibit A which purportedly included the legal property description, no party to this proceeding challenged or disputed the issue that the property at issue was the same premises owned by the Trust and identified in Plaintiffs' Exhibit 1.

Contract specifically identified the mortgage, in the then current amount of approximately $129,700, held by Party-in-Interest, Bangor Savings Bank as an existing encumbrance on the premises, but further indicated that the seller was aware of no other encumbrance on the property.

Although the Contract identifies the mortgage held by Bangor Savings Bank, Bangor Savings Bank was not informed of the Contract by the Plaintiffs at the time it was entered into with the Defendants, or at any time until well after the pending Complaint in this matter had been initiated. Moreover, the Plaintiffs failed to record the Contract with the Registry of Deeds in accordance with 33 MRSA §482(2). The Court finds that such conduct on the Plaintiffs' part violated the provisions of the mortgage (Interveners Exhibit 3) and reasonably required Bangor Savings Bank to formally intervene to protect its interest in the property in accordance with specific Uniform Covenants outlined in the mortgage.

The Court finds that Bangor Savings Bank incurred reasonable attorney's fees in intervening and protecting its interests in this matter in the total amount of $1362.96.

The Plaintiff's failed to timely pay the property taxes due on the premises at issue in this case which led to the recording of a tax lien by the Town of Brooks.[4] At about the same time the Defendants became aware of the existence of the Town's tax lien in January 2015, the Defendants ceased making installment payments to the Plaintiffs in accordance with the

---

[4] It is not clear from the evidence presented whether the tax lien was an encumbrance which existed at the time the Contract was signed on April 2, 2014.

3

Contract. Although the details regarding the subsequent arrangements between the Plaintiffs and the Town relating to outstanding tax liabilities are not entirely clear, the Town has not proceeded with any municipal foreclosure of the premises. The Plaintiffs entered into some satisfactory agreement with the municipality with respect to the payment of the taxes due.

Despite the subsequent arrangements between the Plaintiffs and the Town of Brooks regarding satisfaction of the outstanding tax liabilities, the Defendants did not resume with their installment payments to the Plaintiffs. The evidence was not disputed that the Defendants have failed to make any installment payments to the Plaintiffs since January 2015. The unpaid monthly installment payment of $1000 plus the additional $200 payment reflecting the real estate tax contribution for the 22 months from January 2015 through to the date of trial would total $26,400.[5]

Defendant Juanita Littlefield has continued to reside at the premises at least through the time of trial. The evidence would suggest that Defendant David Littlefield had abandoned the premises long before the trial in this matter. Defendant Juanita Littlefield and Myles Gardiner were divorced subsequent to entering into the Contract, and it is not clear whether Defendant Myles Gardiner continued to reside at the premises.

---

[5] There was evidence presented at trial that the insurance coverage on the premises was cancelled at some point after Defendants ceased making payments to the Plaintiffs. Because it is not clear when such expense ceased, the Court has not included that amount in the determination of the total amount past due.

4

The photographs introduced into evidence demonstrate that the premises, at least with regard to certain rooms and the porch area had been subjected to a considerable amount of trash and debris. The Court was not presented with sufficiently specific evidence regarding damage or disrepair to the premises, or the amount which might be required to address any such claims.

The Court finds that the Plaintiffs have incurred reasonable attorney's fees in pursuit of its foreclosure Complaint in this matter in the total amount of $3500.

## ANALYSIS

The Court considers the existence of the municipal tax lien on the premises at issue to constitute a partial breach of the Contract in violation of Section 4 of the Contract regarding liens and encumbrances. The partial breach by the Plaintiffs in this regard means that the other parties' obligation to perform its remaining duties under the Contract is conditioned on the absence of any uncured material failures by the Plaintiffs. *Oak Ridge Builders v. Howland, 2006 Me. Super. LEXIS 215, citing RESTATEMENT (SECOND) CONTRACTS, §237.*

The failure of the Defendants to make the monthly installment payments required would constitute a clear breach of their duties under the Contract. Although the initial failure to make the monthly installment payment due in January 2015 could be conditionally justified by the partial breach on the Plaintiffs' part relating to the tax lien or encumbrance, the ongoing failure to make subsequent installment payments even after the Plaintiffs cured the

5

earlier material failures on its part, constituted a total breach of contract by the Defendants as a result of their non-performance.

As a result of the breach of contract by the Defendants, the Plaintiffs, pursuant to the applicable contractual terms of the Contract, were entitled to initiate a complaint to foreclose the rights of the Defendants to buy the premises at issue. In accordance with the statutory provision cited in the Contract, 14 MRSA §6203-F, the Court concludes the Plaintiffs are entitled to a Judgment in their favor with respect to their foreclosure claim, and that the Defendants are entitled to a 60 day period of redemption to redeem their right to purchase the premises.

Accordingly, if the Defendants do not pay the sum due noted above in the amount of $26,400, with interest, plus reasonable attorneys fees in the amount of $3500 within the 60 day period of redemption, any and all rights the Defendants have with respect to the premises at issue, including specifically the right to possess the same premises shall terminate. Upon expiration of the period of redemption, the Plaintiffs shall be entitled to the issuance of a writ of possession which may be subsequently served on the Defendants in accordance with 14 MRSA §6005.

The Defendants are specifically ordered, during the period of redemption, to refrain from any conduct which would in any way damage or waste the premises at issue.

Party-in-Interest Bangor Savings Bank's interest in the premises at issue in this case are hereby declared not to be adversely affected by the decision of

6

this Court. If the Defendants redeem their rights in accordance with this decision, any rights the Defendants subsequently retain will be subject to any superior interest held by Bangor Savings Bank.

Under the terms of the Contract, in the event of a default on the part of the buyers, the seller may declare all sums which the buyer is obligated to pay to seller pursuant to the agreement, immediately due and payable. For the reasons noted above, the Court finds the Defendants have defaulted and breached the Contract, and the amounts due the Plaintiffs under the Contract as of the time of trial equal $26,400. Accordingly, if the Defendants fail to redeem by paying the amounts due during the 60 day period of redemption, Plaintiffs shall be entitled to a Judgment in their favor in the amount of $26,400 plus an award of reasonable attorneys fees in the amount of $3500.

Finally, with respect to the cross-claim requesting declaratory judgment relief by Bangor Savings Bank, the Court hereby orders that Bangor Savings Bank's interests in the premises as between the parties to this proceeding are as set forth above. The Court further orders the Cross-claim Plaintiff is entitled to an award of reasonable attorneys fees against the Plaintiffs in the amount of $1362.96.

The Clerk is directed to incorporate this Findings, Decision and Judgment, by reference, in accordance with MRCivP 79(a).

Date: 12/16/16

_____
SUPERIOR COURT JUSTICE

8